IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEE M. PATTON, | ) | CASE NO. 3:13 CV 1071 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me by referral[1] is an action by Lee M. Patton under 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security denying his

application for supplemental security income.[2] The Commissioner has answered[3] and filed

the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document entry dated May 10, 2013.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 6.

[6] ECF # 13.

parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, I will recommend that the decision of the Commissioner be reversed as not supported by substantial evidence, and thus that the matter be remanded.

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Patton, who was 31 years old at the time of the hearing,[11] has a "limited education"[12] and a history of working in various unskilled jobs.[13] He is married with a stepson.[14] Contrary to Patton's representations, the ALJ found that Patton was physically active, playing "aggressive" basketball, football, and wrestling with his stepson.[15]

---

[7] ECF # 17 (Commissioner's brief); ECF # 16 (Patton's brief), ECF # 18 (Patton's reply brief).

[8] ECF # 17-1 (Commissioner's charts); ECF # 16-2 (Patton's charts).

[9] ECF # 16-1 (Patton's fact sheet).

[10] ECF # 20.

[11] *See*, Transcript ("Tr.") at 23.

[12] *Id.* at 24.

[13] *Id.* at 23-24.

[14] *Id.* at 21.

[15] *Id.*

The ALJ, whose decision became the final decision of the Commissioner, found that Patton had the severe impairment of rheumatoid arthritis.[16]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Patton's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: never climb ladders, ropes, scaffolds; occasionally crawl; no full extension of the right upper extremity; no reaching above shoulder height; frequently finger and handle; and work in a seated or standing position.[17]

Given that residual functional capacity, the ALJ, relying the testimony of a vocational expert ("VE"), found Patton incapable of performing his past relevant work as fast food worker.[18]

Then, based on an answer to a hypothetical question posed to the VE at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Patton could perform.[19] The ALJ, therefore, found Patton not under a disability.[20]

---

[16] *Id.* at 19.

[17] *Id.* at 20.

[18] *Id.* at 23.

[19] *Id.* at 24-25.

[20] *Id.*

C.      **Issues on judicial review and decision**

Patton asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Patton presents the following issue for judicial review:

> •      Whether the Administrative Law Judge's finding that Patton could perform a limited range of light work is an error where the ALJ failed to give good reasons for the weight assigned to the opinion of the treating pain specialist Oscar Linares, M.D., as required under Sixth Circuit case law.

For the reasons that follow, I will recommend finding that the ALJ's finding of no disability is not supported by substantial evidence and so further recommend that the Commissioner's decision here be reversed and the matter remanded for further administrative proceedings.

# Analysis

A.      **Standards of review**

1.      *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a
conclusion.' "

> The findings of the Commissioner are not subject to reversal merely
> because there exists in the record substantial evidence to support a different
> conclusion. This is so because there is a "zone of choice" within which the
> Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence. If such is the case, the Commissioner

survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's

findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential

standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to

give more weight to opinions of treating sources than to those of non-treating sources under

appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals most able to provide
> a detailed, longitudinal picture of your medical impairment(s) and may bring
> a unique perspective to the medical evidence that cannot be obtained from

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986);
*Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12,
2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

• State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

• Identify evidence supporting such finding.

• Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a

---

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[41] *Id.* at 375-76.

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary

---

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

-10-

physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

-12-

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

**B.    Application of standards**

As an initial observation, the ALJ made several technical errors under the treating physician rule regarding Dr. Linares's opinion. First, she classified Dr. Linares as an examining physician, despite the treating relationship between Dr. Linares and Patton that existed for over a year as of the time of the opinion at issue. Second, she mischaracterized Dr. Linares as affiliated with Ohio Job & Family Services. In fact, the evaluation form that Dr. Linares completed was supplied by Ohio Job & Family Services, but the doctor had a private practice as a pain management specialist.

---

[69] *Id*. at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

-13-

Third, although Dr. Linares's opinion contained specific limitations on work-related capabilities, the ALJ seemingly only acknowledged that part of the opinion stating that Patton "was completely precluded from work." Specifically, the opinion states:

> As for the opinion evidence, the undersigned noted that Oscar A. Linares, an examining physician from Ohio Job and Family Services, rendered an opinion that the claimant was complete precluded from work. (Exhibit 13F). The undersigned gives this opinion little weight as it does not match the other medical evidence contained in the record.[72]

The balance of the ALJ's discussion regarding Dr. Linares is a criticism of opinions going to administrative findings dispositive of the case and the observation, accurate in isolation, that such findings are reserved to the Commissioner.[73]

Under the regulations and the case law of the Sixth Circuit detailed above, an ALJ must properly recognize a treating physician as such; make a finding as to whether the treating physician's opinion should receive controlling weight; if controlling weight is not assigned, explain why; assign weight other than controlling to the opinion; and give good reasons for the weight so assigned.

Here, the ALJ did not acknowledge Dr. Linares as a treating physician, made no determination regarding controlling weight, gave no reasons for a decision not to assign controlling weight, assigned little weight, and gave the cursory explanation that the opinion did not match other medical evidence in the record without further elaboration. This

---

[72] Tr. at 23.

[73] *Id.*

-14-

represents clear non-compliance with the requirements of the regulations and Sixth Circuit precedents.

That said, however, the ALJ adopted a very restrictive RFC, which in a number of respects is consistent with Dr. Linares's opinion.[74] But the RFC and Dr. Linares's opinion differ in one significant respect – Dr. Linares notes a marked limitation in handling (fine and gross manipulation)[75] whereas the RFC provides for frequent fingering and handling.[76] The ALJ's decision does not acknowledge this inconsistency or offer any reason for the frequent versus occasional limitation. In that regard, it is not apparent whether the greater limitation, if adopted, would have rendered Patton disabled. Further, although there is some discussion with the VE about occasional handling and fingering,[77] that testimony is confusing because of interjection of a less than five pound restriction on lifting with the right upper extremity. Thus, the opinion of the ALJ did not adopt Dr. Linares's opinion. The opinion, therefore, cannot be considered harmless error on that basis.

Accordingly, the non-compliance with the good reasons requirement of the treating source rule can only be harmless error if it otherwise met the objectives of that requirement despite not actually conforming to its particulars. Broadly speaking, that underlying objective is that the opinion must provide a basis or reason for discounting the opinion of a treating

---

[74] *Id.* at 20.

[75] *Id.* at 347.

[76] *Id.* at 20.

[77] *Id.* at 64.

source that is capable of meaningful judicial review. As courts have emphasized, this means that the opinion itself must set forth the reasons the lesser weight was assigned and that the reasons not be supplied after the fact by the Commissioner in the brief or by the court itself by its own interpretation of the evidence. While courts do not necessarily require that the ALJ's reasons be contained in a unified statement of reasons, labeled as such, courts do require that the reasons be stated by the ALJ, with citations to the evidentiary support, somewhere in the opinion.

Here, as noted, Dr. Linares's opinion contains a marked limitation on handling.[78] As Patton observes, Dr. Linares's opinion was supported by various clinical and diagnostic findings purporting to support that marked limitation. But the ALJ did not specifically address that specific limitation, or the supporting evidence, but merely focused on Dr. Linares's conclusion that Patton was precluded from working and then gave the entirety of Dr. Linares's opinion "little weight" because the ultimate question of disability is reserved to the Commissioner.[79]

As such, the ALJ does not provide any statement of reasons as to why any functional limitation finding of Dr. Linares – and particularly his finding as to a marked limitation on handling – should be accorded anything less than the controlling weight given to findings of treating sources when the findings are supported by clinical and diagnostic evidence in the record. With no such statement or analysis in this opinion, any attempt by the Commissioner

---

[78] Tr. at 347.

[79] *Id.* at 23.

to now articulate a reason, or to ask the Court to do so, must be rejected as a post-hoc rationalization.

## Conclusion

Therefore, for the reasons stated above, I recommend finding that substantial evidence does not support the finding of the Commissioner that Patton had no disability. Accordingly, I further recommend that the decision of the Commissioner denying Patton supplemental security income be reversed and the matter remanded for further proceedings.

Dated:  March 28, 2014                         s/ William H. Baughman, Jr.
                                               United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[80]

---

[80] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).